UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § § § |
| v. | § §    CRIMINAL NO.    C-11-344 |
| YOSBEL RODRIGUEZ and NORBIEL IZQUIERDO | § § § § |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTIONS TO SUPPRESS**

This matter comes before the Court on Defendant Yosbel Rodriguez' Motion to Suppress (D.E. 22), Defendant Rodriguez' First Amended Motion to Suppress (D.E. 28), and Defendant Norbiel Izquierdo's Motion to Suppress (D.E. 29). Having carefully considered the parties' memoranda, the evidence presented at the suppression hearing, and otherwise being fully informed, the Court DENIES Defendants' Motions to Suppress.

**I.      INTRODUCTION**

This case arose out of a routine vehicle stop of a tractor-trailer conducted at a Border Patrol check point located outside Falfurrias in Southern Texas. A canine alerted to Defendants' vehicle, and after further inspection, Border Patrol agents discovered thirty-four bundles of marijuana hidden underneath the tractor's headliner panels. On April 6, 2011, a federal grand jury returned an indictment charging Defendants with one count of conspiracy to possess with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. § 846 and one count of possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(D). (D.E. 14.) Defendants filed motions to suppress arguing that their warrantless arrest and the Border Patrol agents' warrantless search of Defendant Rodriguez' cell phone constituted a violation of the Fourth Amendment. Defendants therefore request that the Court suppress any evidence obtained from the phone, any evidence obtained from the GPS units seized from the tractor's cab, and any incriminating statements made by Defendants following their arrest as fruit of the poisonous tree. A suppression hearing regarding Defendants' motions to suppress was held on June 22, 2011. Ruling from the bench, the Court denied Defendants' motions to suppress. A jury trial was held from July 5, 2011 through July 7, 2011. Defendants were found guilty on both counts of the indictment. This Memorandum Opinion and Order Denying Defendants' Motions to Suppress further explains the Court's findings of fact and conclusions of law as stated on the record at the suppression hearing on June 22, 2011.

## II.     STATEMENT OF FACTS

On March 10, 2011, Defendants Yosbel Rodriguez and Norbiel Izquierdo were stopped at the Falfurrias Border Patrol Check Point by Border Patrol Agent Brandon Copenhaver. At the time, Defendant Izquierdo was operating a tractor and an attached flatbed trailer, which was loaded with a locomotive engine. Defendant Rodriguez accompanied him as the co-operator and was traveling in the passenger's seat when the truck passed through the Check Point. Both men worked for the same trucking company. Agent Copenhaver questioned Defendants as to their citizenship and whether they had a bill of lading. Both Defendants stated that they were permanent residents of the United States and showed Agent Copenhaver a handwritten bill of lading. During the interview, Defendants were jittery, visibly shaking, and did not look the agent in the eyes.

While Agent Copenhaver questioned Defendants, Border Patrol Agent Gonzales performed

a canine inspection of the vehicle's exterior. The canine alerted to the tractor portion of the vehicle. Agent Copenhaver then requested permission from Defendant Izquierdo to x-ray the tractor. Mr. Izquierdo consented. The vehicle was taken to the backscatter area of the Check Point. Defendants waited on a bench approximately fifty yards from the truck, supervised by an agent, while the x-ray inspection was performed.

Agent Copenhaver asked Defendants Izquierdo and Rodriguez whether they were responsible for everything in the tractor-trailer, to which they answered in the affirmative. Defendant Izquierdo indicated that he had been driving the tractor for six months. Defendant Rodriguez indicated that he had been driving the tractor with Defendant Izquierdo for the last three months. While Agent Copenhaver spoke with Defendants, he noticed that they avoided eye contact, gave short and quick answers, and paid close attention to the vehicle.

The x-ray images showed several anomalies in the tractor's cab. A further search of the cab revealed the presence of thirty-four bundles of a leafy green substance, later identified as marijuana, hidden in the upper quarter panels of the cab. In total, the marijuana weighed approximately 49.4 kilograms. Defendants were arrested, handcuffed, and placed in a patrol car, which drove them to the Check Point building located on the opposite side of the highway. There, Defendants were patted down, and the agents placed their possessions in plastic bags. The agents removed a cell phone from Defendant Rodriguez.

Defendants were then read their Miranda rights. Defendant Izquierdo requested an attorney, and the agents ceased questioning him. Defendant Rodriguez, however, waived his Miranda rights and indicated to Agent Copenhaver that Defendants picked up their load in Brownsville that evening, stopped at Love's Gas Station, and continued on to the Falfurrias Check Point. Defendant

Rodriguez stated that he and Defendant Izquierdo were together the entire trip and did not leave the tractor trailer; still, Mr. Rodriguez denied any knowledge of the marijuana in the cab of the truck.

Agent Damien Guerrero performed an inventory of the personal property found on the Defendants at the time of their arrest. Agent Guerrero asked each defendant, while in separate cells, which property belonged to him. Defendant Rodriguez identified a cell phone seized from his person as belonging to him. The contents of the cell phone were later searched by the agents, who found a picture of the bundles of marijuana on what appeared to be the seat of the tractor which Defendants were driving. Agents Guerrero and Copenhaver became aware of this photo approximately an hour and a half after Defendants' personal property was inventoried. When Defendant Rodriguez was asked whether he had knowledge of the marijuana in the cell phone picture, he indicated that he did not and asked for an attorney, at which point, the questioning ended. The contents of the tractor's cab were also inventoried. Among other items, Border Patrol Agent Marvin Williams found a GPS device. Agents subsequently obtained a search warrant for Defendant Rodriguez' cell phone and the electronics found in the tractor's cab, which led to the discovery of incriminating evidence.

### III. ANALYSIS

#### A. Warrantless Arrest Was Lawful

Defendants argue that the Border Patrol agents lacked probable cause to arrest Mr. Rodriguez and Mr. Izquierdo. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony . . . is consistent with the Fourth Amendment if the arrest is supported by probable cause."). Probable cause exists where "the totality of the circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person

to conclude that the suspect committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). In the case at hand, a canine alerted to the cab of the tractor, an x-ray examination of the vehicle showed several anomalies to the upper quarter panels of the cab, agents encountered a substantial quantity of marijuana concealed in the tractor's cab, Defendants exhibited nervousness while the agents searched the tractor, Defendants indicated to the agents that they were responsible for the vehicle's contents, Defendants stated that they had been together the entire trip and had not left the tractor, even sleeping in the cab, and Defendants informed the agents that they had been driving this particular tractor together for the past several months. Defendant Izquierdo argues that his mere operation of the truck was insufficient to give rise to probable cause. (D.E. 29 at 2–3.) Similarly, Defendant Rodriguez asserts that he was only a passenger and that his mere presence in the truck is insufficient to constitute probable cause. The Court rejects these arguments.

The agents only needed to possess reasonable grounds, based on the totality of the circumstances, that the Defendants were engaged in unlawful activity. *Pringle*, 540 U.S. at 370–71. The facts available to the agents at the time of the Defendants' arrest were more than sufficient to satisfy the requirements of probable cause. Defendants arguments that their mere presence in the vehicle was insufficient to support probable cause are unavailing. As neither of the Defendants acknowledged possession of the drugs, it was completely reasonable for the agents to assume that the Defendants jointly possessed the marijuana. *Id.* at 372 ("We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly."). Furthermore, the Supreme Court has recognized that "a car passenger . . . will often be

5

engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999). This is particularly true in the case at hand where Defendants worked for the same trucking company and served as co-operators of the tractor. Accordingly, the Court concludes that the warrantless arrests of Defendants were based on probable cause and did not violate the Fourth Amendment.

### B.      Search of the Cell Phone Was Lawful

Next, Defendants argue that the warrantless seizure and search of Defendant Rodriguez' cell phone following his arrest violated the Fourth Amendment. Defendants assert that because the unlawful search of the phone directly led to the issuance of a warrant and subsequent forensic examination of the contents of the cell phone and GPS units, and did not take place pursuant to any exception to the Fourth Amendment's warrant clause, the Court must suppress all evidence subsequently obtained from the cell phone and GPS units as fruit of the poisonous tree. Additionally, Defendants assert that any verbal statements must be suppressed as fruit of the poisonous tree. (*See generally* D.E. 22 at 4–7; D.E. 28 at 4–7; D.E. 29 at 3–6.)

First, the Court finds that Defendant Rodriguez' cell phone was seized from his person. The Court rejects Defendants' argument that the cell phone was seized from the cab of the truck during an inventory search and that the agents then exceeded the lawful scope of an inventory search by viewing the cell phone's contents. The Court instead finds that the phone was seized from Mr. Rodriguez' person following his arrest, and Border Patrol agents then searched the phone for evidence of the crime which they were investigating. Still, Defendant Rodriguez asserts that any search incident to arrest must be based on the need to remove weapons and prevent the concealment or destruction of evidence, which was not an issue in the case at hand, because Mr. Rodriguez was

safely secured in police custody at the time of the search, and therefore, unable to exercise any control over the cell phone. (D.E. 28 at 4–6.) This argument, however, ignores the Supreme Court's holding in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009) and the Fifth Circuit's conclusions in *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007).

As Mr. Rodriguez' cell phone was seized from his person, not the cab of the tractor, this case is directly analogous to *Finley*. In that case, Mr. Finley and a second suspect were stopped following a controlled drug buy under suspicion of possessing methamphetamine with intent to distribute. *Id*. at 253–54. Mr. Finley was detained, and his vehicle was searched. *Id*. at 254. Police found methamphetamine and other drug-related items in the vehicle, and Mr. Finley was placed under arrest. *Id*. Following the arrest, police searched Mr. Finley and found a cell phone in his pocket. *Id*. During police questioning following his arrest, Mr. Finley denied any involvement in the controlled drug buy. *Id*. Officers then searched Mr. Finley's cell phone, which contained several text messages related to narcotics use and trafficking. *Id*. Presented with this evidence, Mr. Finley then made incriminating statements to the officers. *Id*. at 254–55. Mr. Finley argued before the district court that the text messages and call records recovered from his cell phone during the warrantless search should be suppressed as the search violated the Fourth Amendment to the Constitution. *Id*. at 253. The district court denied Mr. Finley's motion to suppress, and the Fifth Circuit affirmed.

The Fifth Circuit reasoned that a full search of an arrestee's person is permitted following a lawful custodial arrest, including the contents of any containers found on the arrestee, in order to find and preserve evidence for use at trial. *Id*. at 259–60.

> Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also without any additional justification,

> look for evidence of the arrestee's crime on his person in order to preserve it for use at trial. . . . The permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person.

*Id*. Moreover, the Fifth Circuit specifically concluded that such searches may extend to cell phones and their contents. *Id*. at 260. As Mr. Finley and his cell phone were searched pursuant to an exception to the warrant clause—valid custodial arrest—the officers were permitted to search the cell phone's contents for evidence of the crime of arrest. *Id*. The case at hand presents an almost identical set of facts.

Nevertheless, Defendants assert that *Finley* is no longer viable following the Supreme Court's decision in *Gant*. (D.E. 28 at 5.) Defendants argue that, under *Gant*, the warrantless search of a vehicle following a valid arrest is only permitted when the arrestee is unsecured and within reaching distance of the vehicle. (*Id*.) This argument, however, ignores the second part of the *Gant* holding which clearly states that police may also search a vehicle post-arrest when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. 1710. *Finley* similarly concludes that the search of an arrestee, and any containers found on the arrestee's person, for evidence of the arrestee's crime is valid under the Fourth Amendment. 477 F.3d at 259–60. The Court sees no difference between whether the cell phone in the case at hand was found on Mr. Rodriguez' person or in the vehicle. If the cell phone was searchable post-arrest inside the vehicle, it was also searchable outside of the vehicle. As the arrest was based on probable cause and the officers reasonably believed the cell phone contained evidence of the offense of arrest, the Court concludes that the search of the cell phone's contents was lawful.

**WHEREFORE**, the Court hereby **DENIES** Defendants' Motions to Suppress. (D.E. 22, 28, and 29.)

**SIGNED** this 6th day of September 2011.

*Hayden Head*

_____
**HAYDEN HEAD**
**SENIOR UNITED STATES DISTRICT JUDGE**